UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DIANTE BREWER,<br><br>*Defendant*. | Criminal Case No. 25-254 (SLS)<br>Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

In July 2025, officers of the United States Park Police arrested Diante Brewer pursuant to a felony warrant issued in Maryland. After handcuffing Mr. Brewer, the officers recovered a firearm from his waistband. Mr. Brewer was charged with unlawful possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). Mr. Brewer now moves to suppress evidence seized during that arrest, including the firearm. For the following reasons, the Court denies that motion.

## BACKGROUND

The relevant facts are undisputed except where otherwise noted. In November 2023, the Circuit Court for Prince George's County, Maryland issued a warrant to arrest Mr. Brewer. Ex. 2, ECF No. 12-4. On July 9, 2025, officers of the United States Park Police who were aware of that warrant learned that Mr. Brewer was present outside an apartment building in Washington, D.C. Mot. Suppress 1–2, ECF No. 10; Opp'n 1–2, ECF No. 12-1. As the officers approached the apartment building, they observed Mr. Brewer standing among a group of other men. Mot. Suppress 1–2; Opp'n 2. The officers approached, and the Parties give different accounts about what happened next. According to Mr. Brewer, he "started to briskly walk away." Mot. Suppress 2.

According to the Government, an officer "attempted to stop" him, and Mr. Brewer "immediately attempted to break free and take flight." Opp'n 2. Both Parties agree that the officers then forced Mr. Brewer to the ground. Mot. Suppress 2; Opp'n 2. When the officers rolled Mr. Brewer over, they removed a firearm from his waistband. Mot. Suppress 2; Opp'n 2.

On August 28, 2025, an indictment was filed in this Court charging Mr. Brewer with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. On October 14, 2025, Mr. Brewer moved under the Fourth Amendment to suppress physical evidence found during his arrest. Mot. Suppress, ECF No. 10. The Government filed its Opposition on November 4, 2025. ECF No. 12-2. A reply by Mr. Brewer was due on November 10, 2025, but Mr. Brewer did not file one. *See* Min. Order (Sept. 23, 2025). A motion hearing was scheduled for November 19, 2025. *See* Min. Order (Oct. 30, 2025).

On November 17, 2025, the Court ordered the Parties to file a joint status report explaining what the Parties expected to address at the motion hearing, including whether they expected to call any witnesses. *See* Min. Order (Nov. 17, 2025). In the Joint Status Report, the Parties agreed that the Court "can issue a ruling based solely on the motions that were filed by the parties." ECF No. 13. Although the Government offered to present a live witness, "both counsel agree[d] that a ruling can be made without calling a live witness." *Id.* Accordingly, the Court vacated the motion hearing. *See* Min. Order (Nov. 18, 2025). Mr. Brewer's motion is ripe for review.

## LEGAL STANDARD

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' and it provides that 'no Warrants shall issue, but upon probable cause.'" *United States v. Williams*, No. 25-cr-112, 2025 WL 2639171, at *2 (D.D.C. Sept. 12, 2025) (alteration in original) (quoting U.S. Const.

2

amend. IV). "Violations of the Fourth Amendment's guarantees are generally subject to the exclusionary rule, which requires courts to suppress evidence obtained through unconstitutional means." *United States v. Rhine*, 652 F. Supp. 3d 38, 72 (D.D.C. 2023). "This exclusion of evidence includes both 'the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree.'" *Id.* at 72–73 (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)). "Generally, '[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.'" *United States v. Hassanshahi*, 75 F. Supp. 3d 101, 108 (D.D.C. 2014) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).

## DISCUSSION

Mr. Brewer concedes that the arresting officers "possessed a presumptively valid arrest warrant," and he does not contest that those officers were permitted to execute that warrant. *See* Mot. Suppress 4. Instead, Mr. Brewer argues that the evidence uncovered during his arrest should be suppressed for two reasons: (1) the arresting officers used unreasonable force when executing the warrant, and (2) the officers lacked a warrant to search Mr. Brewer following his arrest. The Court is not convinced.

*First*, Mr. Brewer has not shown that the evidence should be suppressed because the arresting officers used unreasonable force. To begin, Mr. Brewer cites no authority for the proposition that suppression is the proper remedy when officers use excessive force in executing an arrest warrant. Mot. Suppress 2. Although it appears that the D.C. Circuit has not addressed the question, other circuits have concluded that suppression is not an appropriate remedy. *See, e.g.*, *United States v. Collins*, 714 F.3d 540, 543–44 (7th Cir. 2013) (discussing cases from the First and Third Circuits). The Court need not answer that question, however, because Mr. Brewer has failed

to demonstrate that the arresting officers in this case used excessive force when executing the arrest warrant.

"When reviewing a claim that an officer used excessive force in violation of the Fourth Amendment, [the Court] appl[ies] the objective reasonableness standard." *United States v. Clark*, 156 F.4th 664, 680 (D.C. Cir. 2025). Among other things, the Court must consider "whether a reasonable officer on the scene would have applied the same amount of force under the circumstances." *Id.* Here, there is no indication that the arresting officers used force disproportionate to the needs of the situation. Accepting Mr. Brewer's account of his arrest as true, he "briskly walk[ed] away" from the approaching officers, who "grabbed [him] by the arm" and "forc[ed] him to the ground." Mot. Suppress 2. This threadbare description at most suggests that the arresting officers were rough—not that they used excessive force. Mr. Brewer has failed to meet his burden to demonstrate that the degree of force used by the arresting officers violated the Fourth Amendment.

*Second*, the officers' discovery of the firearm in Mr. Brewer's waistband did not violate the Fourth Amendment. Mr. Brewer argues that the officers had no authority to search him and remove the firearm from his waistband after his arrest. Yet he has not identified a single case holding that officers may not search an individual whom they have lawfully arrested pursuant to a warrant. Mot. Suppress 3. The Supreme Court has held that "[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes search."

4

*Maryland v. King*, 569 U.S. 435, 449 (2013) (alteration in original) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979)).[1]

Mr. Brewer cites two D.C. Circuit cases for the proposition that the Fourth Amendment limits officers' ability to conduct a search incident to a lawful arrest once the individual is restrained. Mot. Suppress 3. He claims that such searches are limited "to protecting officer safety and preventing destruction of evidence." *Id.* Not so.

In the first case, *United States v. Askew*, the D.C. Circuit addressed permissible searches incident to a so-called *Terry* stop—*i.e.*, "an on-the-street seizure based on less than probable case." 529 F.3d 1119, 1129 (D.C. Cir. 2008) (en banc). Summarizing Supreme Court precedent, the Circuit explained that "individuals stopped on no more than reasonable suspicion may not, consonant with the protections of the Fourth Amendment, be searched for the purpose of revealing and gathering evidence pertaining to the illegal behavior of which they are suspected." *Id.* This case, of course, does not involve a *Terry* stop but a concededly lawful arrest pursuant to a felony warrant. So, it does not help Mr. Brewer.

---

[1] Mr. Brewer's argument starts from the premise that the officers performed a "subsequent search of Mr. Brewer's waistband" after arresting him. Mot. Suppress 3. The Court is doubtful. The Government has submitted to the Court, without objection, a short portion of the body-worn camera video of Mr. Brewer's arrest. That video shows that the firearm in Mr. Brewer's waistband was in plain view as the officers rolled Mr. Brewer over following his arrest. True, the video also shows the officers pulling up Mr. Brewer's shirt. But the firearm is visible even before the officers begin pulling up his shirt. Thus, it seems that the officers' discovery of the firearm did not result from any search of Mr. Brewer. *See United States v. Johnson*, 365 F. Supp. 3d 89, 97 (D.D.C. 2019) ("A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." (cleaned up)); *cf. United States v. Lewis*, No. 24-cr-144, 2024 WL 3581460, at *1 (D.D.C. July 29, 2024) (explaining that the "plain view doctrine" generally "allows warrantless seizure when: (1) the officer who obtained the evidence was lawfully present at the time of the seizure; (2) the item seized was in plain view at the time when it was discovered; and (3) the object's incriminating character was immediately apparent" (quoting *Horton v. California*, 496 U.S. 128, 136–37 (1990))). Still, the Court does not rest its holding on this observation because the Government does not dispute that there was a search and because the video only shows a short portion of the arrest.

The second case cited by Mr. Brewer is *United States v. Bookhardt*, 277 F.3d 558 (D.C. Cir. 2002). He describes *Bookhardt* as a case in which "the D.C. Circuit suppressed evidence where officers conducted a search that was 'not substantially contemporaneous with, and confined to, the arrest itself.'" Mot. Suppress 3. But the Circuit did no such thing. Instead, it *reversed* an order suppressing evidence, applying the rule that "even if probable cause does not support arrest for the offense charged by the arresting officer, an arrest (and search incident thereto) is nonetheless valid if the same officer had probable cause to arrest the defendant for another offense." *Bookhardt*, 277 F.3d at 565, 567. And the language Mr. Brewer purports to quote appears nowhere in the *Bookhardt* opinion.

Still, even accepting Mr. Brewer's (unsupported) premise that searches incident to arrest are limited to "protecting officer safety and preventing destruction of evidence," Mot. Suppress 3, the facts here do not support suppression. Mr. Brewer highlights that he had been handcuffed and was laying on the ground. *Id.* Yet the Supreme Court has recognized the "danger[] to the arresting officer" of a firearm "concealed in the clothing of the person arrested." *Chimel v. California*, 395 U.S. 752, 763 (1969). Mr. Brewer cites no case supporting the proposition that arresting officers give up the opportunity to search an arrestee's clothes for weapons because they have restrained him. To the contrary, the Supreme Court has explained that "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel*, 395 U.S. at 762–63. And more fundamentally, the tenor of Mr. Brewer's argument contravenes the principle that "the search-incident-to-arrest exception . . . is categorical. It does not depend on an evaluation of the threat to officer safety . . . in a particular case." *Birchfield v. North Dakota*, 579 U.S. 438,

473 (2016). Accordingly, the Court concludes that the officers' discovery of the gun in Mr. Brewer's waistband was not in violation of the Fourth Amendment.

## CONCLUSION

For the foregoing reasons, the Court DENIES Mr. Brewer's Motion to Suppress Physical Evidence, ECF No. 10.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   December 15, 2025